GAIL SHIFMAN (State Bar No. 147334)
Law Office of Gail Shifman
2431 Fillmore Street
San Francisco, California 94115
Telephone:     (415) 551-1500
Facsimile:     (415) 551-1502
Email:         gail@shifmangroup.com

JOANNA SHERIDAN (State Bar No. 260090)
J.P. Sheridan Law
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Telephone:     (415) 347-2700
Facsimile:     (415) 347-2701
Email:         joanna@jpsheridanlaw.com

Attorneys for Defendant
JAMARE COATS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAMARE COATS<br><br>　　　　　　　Defendant. | Case No.:  CR 19-0313 WHA<br><br>MR. COATS' RESPONSE TO COURT'S REQUEST FOR BRIEFING ON AIDING AND ABETTING |

　　　　The Court has requested briefing on the issue of aider and abettor liability in this case. Mr. Coats herein responds to the following questions posed by the Court: (1) Given the facts in our case, how do the recent changes in California law restricting aider and abettor liability for murder affect the government's theory of Mr. Coats' liability for the murder, (2) Given the facts in this case, what jury instructions will be required on aiding and abetting, (3) Under federal law as applied to the facts of this case, what is the minimum conduct required for aiding and abetting, and (4) Whose motive matters

when the theory of liability is aiding and abetting? See, ECF 646.

### 1. California law restricts liability for murder to direct aider and abettors whose personal actions and subjective *mens rea* prove malice aforethought beyond a reasonable doubt.

Count One alleges that "[o]n or about March 23, 2019 the defendants … with others known and unknown, each aided and abetted by the others, for the purpose of maintaining their position in Mac Block, an enterprise engaged in racketeering activity, unlawfully and knowingly murdered Victim One, which murder was in violation of California Penal Code §§187, 188, 189 and 31, all in violation of Title 18 United States Code §1959(a)(1) and 2." SSI, ¶9. As alleged, the government must prove a murder in violation of California law in order to establish the murder element of the 1959 charge.

The evidence in his case has shown that Mr. Harrison fired 11 rounds at Mr. Simmons at close range. Five projectiles were found within Mr. Simmons' body. Three of the five are .40 caliber and linked to Mr. Harrison, the two fragments are not forensically linked to any gun. Given these facts, the jury may conclude that Mr. Coats' gunshots did not hit Mr. Simmons and therefore Mr. Coats' liability for murder could only be premised on the theory that he aided and abetted Mr. Harrison's killing of Mr. Simmons.

Murder under California law is defined as the unlawful killing of a person with malice. Cal. Penal Code §187. Malice may be express or implied. Cal. Penal Code §188. "Both express and implied malice require proof of the defendant's mental state. In the case of express malice, the defendant must have intended to kill. Implied malice also involves a mental component, namely a 'conscious disregard for the danger to life that the [defendant's] act poses.' This requires 'examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions.' 'It is not enough that a reasonable person would have been aware of the risk.'" *People v. Offley*, 48 Cal. App. 5th 588, 598 (2020) (internal citations omitted).

In this case, the government's cooperating witness Mr. Harrison never testified that he intended to kill Mr. Simmons. To the contrary, Harrison testified that he reacted to Simmons shooting at him

and fired his gun to defend himself. Remarkably, this testimony was not elicited solely on cross examination but began with his direct testimony. Harrison further acknowledged on cross examination that he shot because he was in fear of death or serious bodily injury. On redirect Harrison testified that he was not in fear of death or injury when he walked to Mr. Mannings car to allegedly retrieve a gun and return to the Heritage Center, but despite making that point Harrison never testified that he formed the intent to kill Mr. Simmons. Given this factual record and the forensic evidence that has been admitted, a jury instruction on express malice is unsupported by the facts and will confuse the jury.

The elements of implied malice murder are set forth in CALCRIM 520: "(1) [The perpetrator] intentionally committed an act; (2) the natural and probable consequences of that act were dangerous to human life; (3) At the time [the perpetrator] acted, [he/she] knew [his/her] act was dangerous to human life; and (4) [T]he perpetrator deliberately acted with conscious disregard for human life." *People v. Navarette* (2016) 4 Cal.App.5th 829, 843-844; *People v. Glukhoy*, 77 Cal. App. 5th 576, 587-88 (2022). Harrison's testimony that Manning tugged on his shirt, that he followed Manning due to a feeling of obligation to back him, that they retrieved guns and returned to the Heritage Center, and that Manning said a number of times "fuck that, dude whipped out on me" appears to have been elicited in support of the government's theory that Harrison acted deliberately and with conscious disregard for human life. While firing a gun at point blank range toward a person is obviously dangerous to human life, in this instance Harrison repeatedly described shooting not deliberatively but spontaneously as a reaction to Mr. Simmons' first shot. On this record, Harrison did not fire his gun in conscious disregard for the danger that his act posed, but in the rush of fear that he would himself would be killed by Mr. Simmons. This record fails to support giving a jury instruction on implied malice for Mr. Harrison's shooting. Despite the government's failure to prove this essential element of their case, Mr. Coats hereinafter proceeds with the legal analysis requested by the Court.

A person who aids and abets the commission of a crime is culpable as a principal in that crime.

Cal. Penal Code §31; 18 U.S.C. §2. Under California law there are two forms of liability for aiders and abettors. First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends." *People v. Perez*, 35 Cal.4th 1219, 1225 (2005); *People v. Gentile*, 10 Cal. 5th 830, 838–39 (2020) superseded by statute [related solely to the mechanism of retroactive relief] as stated in *People v. Birdsall*, 77 Cal. App. 5th 859, 868 (2022); *People v. Glukhoy*, 77 Cal. App. 5th 576 (2022). Second, under the natural and probable consequences doctrine, an accomplice is guilty of the offense he or she directly aided or abetted (i.e., the target offense), and any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the non-target offense). *People v. Chiu*, 59 Cal.4th 155, 161 (2014).

Under California law, a nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." *Chiu*, 59 Cal.4th at 161. The principle need not actually foresee the nontarget offense. Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent. Thus, under *former* California law, if a person aided and abetted an intended assault, but a murder resulted from the actions of another principle to the crime, the aider and abettor could be found guilty of an unintended murder so long as the murder was a natural and probable consequence of the intended assault. *People v. McCoy*, 25 Cal.4th 1111, 1117 (2001).

In 2018, the California legislature eliminated the natural and probable consequences theory of aider and abettor liability from the crimes of first- and second-degree murder by enacting Cal. Penal Code § 188(a)(3), which provides in relevant part: 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or

her participation in a crime.' *Gentile*, 10 Cal. 5th 830, 842-843. Thus, under *current* California law only the direct form of aider and abettor liability remains. "A person's culpability for murder must be premised upon that person's *own actions and subjective mens rea*." *Id*. at 847 (citing legislative findings for Senate Bill 1437).

While not yet addressed by the state supreme court, California courts of appeal have held that direct aiding and abetting an implied malice murder remains a valid theory of liability for second degree murder. *People v. Powell*, 63 Cal.App.5th 689, 712–714 (2021); *People v. Glukhoy*, 77 Cal. Appl. 5th 576, 588 (2022). Guilt as an aider and abettor is guilt "based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state" (*McCoy, supra*, 25 Cal.4th at 1117) thus the Court must begin its analysis with the conduct of the actual perpetrator. The *actus reus* required of the actual perpetrator of an implied malice murder is the commission of "a life endangering act." *Powell*, *supra*, 63 Cal.App.5th at p. 714. By "life endangering act," the court meant an act for which the natural and probable consequences are dangerous to human life and proximately caused death. *Id.* at 713, fn. 27 and 714. In this case, the direct perpetrator fired his gun in self-defense, which is a significant impediment for the government's theory of implied malice as to Mr. Harrison and aider and abettor liability for Mr. Coats.

To be culpable as a direct aider and abettor of implied malice murder, the accomplice "must, by words or conduct, aid the commission of the life-endangering act." *Id.* at p. 713. Thus, the aider and abettor's *actus reus* "includes whatever acts constitute aiding the commission of the life endangering act." *Ibid*. "The *mens rea*, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life." *Ibid.* Assuming, arguendo, that Mr. Harrison's act of firing back at Mr. Simmons after Simmons fired the first shot is the *actus reus* of the actual perpetrator, the government

has presented no evidence that Mr. Coats aided Mr. Harrison in committing that life-endangering act. Mr. Harrison did not testify to any statements or conduct by Mr. Coats that helped him in any way. On the video, Mr. Coats leaves the repass after Mr. Manning and Mr. Harrison.  He walks behind them. He never speaks to Harrison or Manning after leaving the repass.  He never speaks with them about what his own intentions were or what their intentions may have been.  He arrived back at the Heritage Center after Harrison and Manning had already begun mixing with the crowd. Mr. Coats was standing behind Harrison when Simmons started firing directly at the two of them and, rather than helping Harrison, Mr. Coats hid in the alcove while Harrison unloaded all 11 bullets in his gun at Mr. Simmons. On this very unusual factual record, direct aider and abettor liability for an implied malice murder – while viable under current California law – is unsupported as applied to this case.

**2. Proposed Jury Instructions on Aiding and Abetting the California Murder.**

Should the Court determine that an instruction on aiding and abetting an implied malice murder must be given to the jury, modifications must be made to the standard instructions. *Powell* observed that the aiding and abetting instruction in CALCRIM 401[1] is ill suited for a case involving a direct aider and abettor of an implied malice murder because that instruction is tailored around the perpetrator's commission of "the crime" alleged, which is murder, but "the aider and abettor of implied

---

[1] CALCRIM 401 provides: To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

1. The perpetrator committed the crime;
2. The defendant knew that the perpetrator intended to commit the crime;
3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

   AND

4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

malice murder need not intend the commission of *the crime* of murder. Rather, relative to the aider and abettor's intent, he need only intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." *Powell*, 63 Cal.App.5th at p. 712.

Ninth Circuit Model Instruction 5.1 for Aiding and Abetting (18 U.S.C. §2) poses the same problem as CALCRIM 401 for an implied malice theory of aider and abettor liability for murder because it also references the crime that was actually perpetrated rather than the life endangering act that was intended.

Based upon the *Powell* decision and current California Law, Mr. Coats proposes that the Court modify CALCRIM 401 to instruct as follows:

To prove that the defendant is guilty of implied malice murder based on aiding and abetting the perpetrator, the Government must prove that:

1. The perpetrator committed a life endangering act;
2. The defendant personally knew that the perpetrator intended to commit a life endangering act;
3. Before or during the perpetrator's commission of the life endangering act, the defendant personally intended to aid and abet the perpetrator committing a life endangering act;
4. The defendant personally acted in conscious disregard for human life;

   AND

5. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the life-endangering act.

A life endangering act is an act for which the natural and probable consequences are dangerous to human life and proximately caused death.

**3. The minimum conduct required by Federal Law for aider and abettor liability.**

The Ninth Circuit considered the minimum conduct required for aider and abettor liability in *United States v. Andrews*, 75 F.3d 552, 556 (9th Cir. 1996). There, a brother (Ivan) and sister (Paula) intended to confront victim L, who had punched the sister in the jaw earlier in the day. Ivan grabbed his rifle, and Paula asked their father for guns, which he provided to both of them. Ivan and Paula

drove together, found the car where victim L was, and parked right in front of it. The evidence showed that their plan was to "get" victim L and "trash" his car. Ivan got out of the car with his gun, approached victim L and shot him. Paula approached Victim L's car and began firing into it, understanding that there were people inside. Victim L died, as well as one of the people inside Victim L's car. *Id.* at 554.

As to the sufficiency of Ivan's liability for Paula's murder of the victim in the car, the court observed that "[u]nlike the typical aiding and abetting case, this case offers no evidence that Ivan knowingly and intentionally aided, counselled, commanded, induced, or procured Paula to shoot the people in the car." *Id*. at 555. "Ivan did not give Paula the shotgun, drive her to the scene, encourage her to shoot, or in any other obvious way assist her in shooting the victims in the car. It is thus difficult to see how Ivan could have had the requisite intent." *Id.* (noting that "one does not [generally] become an accomplice by refusing to intervene in the commission of a crime . . . [and so] courts have experienced considerable difficulty in cases where the defendant was present at the time of the crime and the circumstances of his presence suggest that he might be there pursuant to a prior agreement to give aid if needed"). The government's theory was that circumstantial evidence supported the jury's inference that Ivan acted with the requisite intent. While it is true that intent maybe inferred from circumstances, the Court pointed out that the evidence merely showed "Ivan … accompanied Paula to the scene of the crime. There is no evidence that Ivan shared Paula's intent to hurt anyone other than Lowery. The testimony as to what was discussed among Ivan and the others shows that any agreement or understanding between Paula and Ivan involved only "getting" Lowery and "trashing" his car." *Id*. at 555-556.

Considering the application of the natural and probable consequences doctrine, *Andrews* further observed that "[t]he jury may infer that Ivan intended the natural and probable consequences of his actions. See *United States v. McInnis,* 976 F.2d 1226, 1234 (9th Cir. 1992). Paula's actions, however, went beyond that scope. Paula did not shoot the victims in the car in the course of getting Lowery; she acted impulsively and on her own." Allowing the jury to infer that Paula's actions here were the natural and probable consequence of Ivan's knowing actions would take the natural and probable consequences doctrine to an extreme, "inconsistent with more fundamental principles of our system of

criminal law." *Id.* (noting that viewing the "natural and probable consequence" doctrine in broad terms "would permit liability to be predicated upon negligence even when the crime involved requires a different state of mind. Such is not possible as to one who has personally committed a crime, and should likewise not be the case as to those who have given aid or counsel.") *Id.* at 556.

Using *Andrews* as a model, the Court may instruct the jury that a defendant cannot aid and abet in the spontaneous actions of another. The perpetrator of the crime must communicate his intent to commit the crime by words or conduct to the defendants, so that they understand the perpetrator's intent at a time when they have the opportunity to choose whether to knowingly aid in the commission of the perpetrator's crimes. Mere presence at the scene of a crime or failing to stop a crime from occurring is not enough.

**4. The Motive of the Actual Perpetrator is what Matters for vicarious liability of VICAR.**

The government must prove that Sean Harrison murdered Mr. Simmons in order to gain entry to or maintain his status within Mac Block. To prove that Mr. Coats aided and abetted Harrison, the government must establish that Coats shared Harrison's intent to kill Simmons and acted with the intent that the murder would further Harrison's entry to or maintaining his status within Mac Block.

To aid and abet a VICAR charge, Mr. Coats must have had foreknowledge that the murder was to occur. In *Rosemond v. United States*, 134 S.Ct. 1240, (2014), the Supreme Court examined 18 U.S.C. § 2, the federal aiding and abetting statute. There, the Court explained that "an aiding and abetting conviction requires a state of mind extending to the entire crime." *Id.* at 1248. With respect to an armed drug sale under 18 U.S.C. § 924(c), the Court held that an aiding and abetting conviction requires the government to prove the defendant had "advance knowledge" that a coconspirator would use or carry a gun as part of the crime's commission. *Id*. at 1243. "[A]dvance knowledge, "continued the Court, "means knowledge at a time the accomplice can do something with it-most notably, opt to walk away." *Id*. at 1249-50.

Thus, for Mr. Coats to be an aider and abettor in murder, he had to share Sean Harrison's *mens rea*–malice aforethought at a time when he could have withdrawn from the offense. Additionally, he had to share *Harrison's intent for Harrison to "gain entrance to, maintain, or increase his position in*

*the enterprise"* when Coats added and abetted Harrison. It is not enough to establish only the shared intent for aiding and abetting a murder under California law to find Coats guilty of the charged offense. See, *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (holding that aider and abettor liability requires that the defendant "knowingly and intentionally aided and abetted" the perpetrator in each essential element of the crime); *United States v. Goldtooth*, 754 F.3d 763, 768 (9th Cir. 2014) (same). The VICAR charged in this case is a California murder "plus" additional federal elements, thus for Mr. Coats to be an aider and abettor in Count One he must have had advanced knowledge of Mr. Harrison's intent not only as to the murder but also of Harrison's intent to "gain entrance to, maintain, or increase his position in the enterprise."

Mr. Harrison described himself as a person who came around Mac Block infrequently because he was a father with kids. He did not have reoccurring or frequent contact with Mr. Coats. There is no evidence that Harrison or Manning had drawn up plans or had discussions prior to the shooting; and no evidence that Mr. Coats knew that Harrison intended to kill or act with conscious disregard for Mr. Simmons' life, let alone that he had aided or encouraged it. Furthermore, Harrison did not testify that he acted to promote his position within Mac Block, nor did he testify that he expressed any such intent to Mr. Coats. Because Harrison's actions were, as he stated, in self-defense and in defense of others, a theory that Mr. Coats is liable for a VICAR murder perpetrated by Harrison as an aider and abettor is illogical and absurd.

## CONCLUSION

For the reasons stated above, Mr. Coats requests that the Court adopt the proposed jury instructions and analysis offered in this brief.

Dated: July 31, 2022

Respectfully submitted,

*/s/ Gail Shifman*
_____
GAIL SHIFMAN
JOANNA SHERIDAN

Attorneys for Defendant
JAMARE COATS